# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                         No. CR 11-2563 JB

JULIO VENCOMO-REYES,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion and Memorandum in Support of Motion for Conditions of Release, filed October 5, 2011 (Doc. 20)("Motion"). The Court held a hearing on November 7, 2011.[1] The primary issue is whether the Court should vacate the Detention Order Pending Trial that the Honorable W. Daniel Schneider, United States Magistrate Judge, entered on August 24, 2011 (Doc. 12)("Detention Order") and release Defendant Richard Julio Vencomo-Reyes pre-trial. The Court finds that Plaintiff United States of America has met its burden of proving that Vencomo-Reyes is a risk of nonappearance by a preponderance of the evidence, and that there are no conditions or combinations of conditions that could reasonably assure his appearance. Accordingly, the Court will detain Vencomo-Reyes pending trial.

## FACTUAL BACKGROUND

Vencomo-Reyes was born in Mexico. See Motion at 1. When he was nine years old, individuals brought Vencomo-Reyes, who was likely an orphan, to live in Taos, New Mexico.

---

[1]Neither party called any witnesses to testify, however, Vencomo-Reyes submitted the arresting police officer's Statement of Probable Cause for the Court's consideration in deciding this matter. See Transcript of Hearing at 3:2-3 (November 7, 2011)(Juarez).

See Motion at 1.  Vencomo-Reyes worked for those individuals, never attaining citizenship or attending school.  See Motion at 1.  The family kept Vencomo-Reyes as a "house-boy," until, after approximately fifteen years, they moved away from Taos and left Vencomo-Reyes behind.  Motion at 1.  Vencomo-Reyes stayed in Taos and sixteen years ago met his wife, Shirley Reyes.  See Motion at 1.

Vencomo-Reyes has lived most of his life in New Mexico and has no known relatives left in Mexico.  See Motion at 2.  Vencomo-Reyes has two children, who were born in the United States.  See Motion at 2.  Since arriving in the United States at age 9, Vencomo-Reyes has not left.  See Motion at 2.

On August 10, 2011, a police officer witnessed a maroon pick-up truck fail to come to a complete stop at the intersection of Weimer Road and Maestas Road in Taos.  See New Mexico v. Reyes, No. M-53-FR-201100149, Statement of Probable Cause, dated August 11, 2011 (Defendant's Ex. 1)("Probable Cause"); Transcript of Hearing at 7:4-10 (November 7, 2011)(Juarez)("Tr.").[2]  The truck then proceeded south on Maestas traveling at 40 miles per hour ("mph") in a 25 mph zone.  See Probable Cause at 1.  The officer then initiated a traffic stop.  Probable Cause at 1; Tr. at 7:10 (Juarez).  The officer asked for a driver's license, insurance, and registration.  See Probable Cause at 1.  Vencomo-Reyes provided only proof of registration and insurance.  See Probable Cause at 1. The officer then asked for his name, date of birth, and social security number ("SSN").  Probable Cause at 1.  Vencomo-Reyes gave his date of birth and a social security card.  See Probable Cause at 1.  Suspecting that the social security card was a fake, the officer had dispatch run the SSN and was informed that there was no return on the SSN.  See Probable Cause at 1.  As Vencomo-Reyes

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

exited the vehicle, the officer noticed a large machete in the vehicle and advised Vencomo-Reyes that he would be detained for questioning.  See Probable Cause at 1.

Vencomo-Reyes' cellular telephone began ringing and the officer ordered Vencomo-Reyes not to reach for it.  See Probable Cause at 1; Tr. at 9:7-8 (Juarez).  When Vencomo-Reyes continued reaching for his cellular telephone, the officer took Vencomo-Reyes to the ground.  See Probable Cause at 1; Tr. at 9:8-12 (Juarez).  Vencome-Reyes' cellular telephone, wallet, and fake social security card fell to the ground.  See Probable Cause at 1.  Shortly thereafter, Vencomo-Reyes' wife, S. Reyes, arrived and, upon being informed that the officer was arresting Vencomo-Reyes, she picked up the fake social security card, despite orders from the officer not to do so.  See Probable Cause at 1.  She then proceeded to tear the card in pieces, sticking some pieces in her shirt and eating others.  See Probable Cause at 1-2.  While this was happening, Vencomo-Reyes head-butted the officer in the nose, which caused his nose to bleed and his eyes to water.  See Probable Cause at 2.  Finally, back-up arrived, and both Vencomo-Reyes and Shirley Reyes were detained.  See Probable Cause at 2.  According to the United States Pretrial Services Report ("PTSR"), on August 10, 2011, Vencomo-Reyes was charged with several state offenses: (i) "tampering with public records"; (ii) "aggravated battery upon a police officer"; (iii) "resisting/evading/obstructing officer"; (iv) "speeding"; (v) "driver's must be licensed"; and (vi) "failure to stop at intersection."[3]  The state

_____

[3]Although the parties did not comment on the appropriateness of the Court's reliance on the Pretrial Service Report ("PTSR"), throughout the November 7, 2011 hearing, Vencomo-Reyes commented on his criminal history.  Tr. at 3:13-17, 10:17-18 (Juarez).  The information regarding Vencomo-Reyes' criminal history is only available to the Court through the PTSR.  Furthermore, the Court frequently relies on PTSRs when determining whether to detain a defendant under 18 U.S.C. § 3142.  See United States v. Holquin, No. 10-3093-006, 2011 WL 2429322, at *1 (D.N.M. June 2, 2011)(Browning, J.)("The United States Pretrial Services bail report reflects . . . ."); United States v. Perez, 785 F.Supp.2d 1177, 1178 (D.N.M. 2011)(Browning, J.)("The United States Pretrial Services ('PTS') report shows . . . .").  There not being any objections to the Court's use of the PTSR, the Court will rely upon it for its decision.

court released Vencomo-Reyes on an unsecured bond on August 18, 2011.  See Motion at 2.  Agents

with United States Immigration and Custom Enforcement ("ICE") took Vencomo-Reyes into

custody on August 19, 2011, and he remained in their custody until federal charges were filed

against him on August 23, 2011.  See Motion at 4.

## PROCEDURAL BACKGROUND

On August 23, 2011, a Criminal Complaint was filed against Vencomo-Reyes alleging a

violation of 18 U.S.C. § 922(g)(5), that being an Alien in Possession of a Firearm and Ammunition.

See Doc. 1.  PTS recommended that Vencomo-Reyes be detained pending trial, because he is a flight

risk and his criminal history indicates that he is a danger to the community.   Besides the state

charges related to this case, PTS found three prior offenses which took place in the 1980s: (i)

trespassing, 1981; (ii) retail theft, 1982; and (iii) driving while under the influence of intoxicating

liquors, 1987.  Vencomo-Reyes made his initial appearance before Judge Schneider on August 23,

2011, and the Plaintiff United States of America moved for Vencomo-Reyes' detention pending

trial.  See Criminal Clerk's Minutes at 1 (August 23, 2011), filed August 23, 2011 (Doc. 2).  Judge

Schneider ordered Vencomo-Reyes detained and set a detention hearing for August 24, 2011.  See

Criminal Clerk's Minutes at 1.

On August 24, 2011, Vencomo-Reyes requested that Judge Schneider release him on his own

recognizance.  See Response ¶ 3, at 1.  Judge Schneider denied Vencomo-Reyes Motion, and found

that "[t]here is a serious risk that the defendant will endanger the safety of another person or the

community."  Detention Order at 2.  Judge Schneider stated, as reasons for his decision, that "the

defendant resisted arrest and was in possession of a firearm and at this time there are no terms or

conditions for release."   Detention Order at 2.  Vencomo-Reyes then filed his Motion for

Reconsideration and Memorandum in Support of Motion for Conditions of Release on September

-4-

6, 2011.  See Doc. 13 ("Motion to Reconsider").

On September 27, 2011, a federal grand jury returned an indictment charging Vencomo-Reyes with a single-count violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2), that being an Alien in Possession of a Firearm and Ammunition.  See Redacted Indictment, filed September 27, 2011 (Doc. 16)("Indictment").  The United States filed its response to the Motion to Reconsider on September 29, 2011.  Judge Schneider entered his Order Denying the Motion on September 29, 2011.  See Doc. 19 ("Order").  Upon consideration of the Motion to Reconsider and the Response, Judge Schneider found that "the presumption applies and has not been overcome," and that "there is insufficient evidence to justify the change in custodial status," because there is currently an ICE detainer against Vencomo-Reyes.  See Order at 1.  On October 5, 2011, Vencomo-Reyes filed this Motion.

On November 7, 2011, the Court held a hearing.  Vencomo-Reyes provided the Court and the United States with a copy of the Statement of Probable Cause, which establishes the circumstances surrounding his arrest.  See Tr. at 3:1-5 (Juarez).  Vencomo-Reyes gave the Court some background information about how he arrived in the United States as an orphaned nine-year old and became an "indentured slave" to the family who brought him here.  Tr. at 3:8-10 (Juarez).  Vencomo-Reyes emphasized that he has very little criminal history.  See Tr. at 3:13-17 (Juarez).  Furthermore, Vencomo-Reyes asserted that no one has stated that he is a flight risk.  See Tr. at 3:17-19 (Juarez).[4]  Judge Schneider, according to Vencomo-Reyes, decided to detain Vencomo-Reyes because he was arrested for resisting and had a firearm in his car.  See Tr. at 3:19-22 (Juarez).  Vencomo-Reyes argued that the United States did not proffer any evidence that he used the gun to

---

[4]While Vencomo-Reyes is correct that neither Judge Schneider, see Detention Order at 1, nor the United States, see Response at 2, asserted that he is a flight risk, the Pretrial Services indicated in the PTSR that it considered Vencomo-Reyes a flight risk.

-5-

resist or that he used the gun in any other manner.  <u>See</u> Tr. at 3:23-25 (Juarez).  Pointing to the Statement of Probable Cause, Vencomo-Reyes asserted that the officer never mentions guns. <u>See</u> Tr. at 4:2-4 (Juarez).  Furthermore, Vencomo-Reyes stated that the state court has yet to hold a preliminary hearing on the state charges and determine whether there is authority to bind him over on those charges.  <u>See</u> Tr. at 4:6-10 (Juarez).

Vencomo-Reyes contended that he is not charged with any crime of violence and disputed that he intentionally assaulted the police officer while being arrested.  <u>See</u> Tr. at 4:18-25 (Juarez). He asserted that no presumption of detention applies and that the Court should analyze whether to detain him under the 18 U.S.C. § 3142(g) factors alone.  <u>See</u> Tr. at 5:9-15 (Juarez).  To support his argument that he did not commit a crime of violence, Vencomo-Reyes pointed the Court to <u>United States v. Ingle</u>, 454 F.3d 1082 (10th Cir. 2006).  <u>See</u> Tr. at 5:16-6:5 (Juarez).  Vencomo-Reyes argued that Judge Schneider looked at his resisting arrest and possession of a firearm together.  <u>See</u> Tr. at 6:6-12 (Juarez).  Chronologically, Vencomo-Reyes asserted, he was charged with resisting arrest, and it was not until the officers searched his vehicle that they discovered the firearm.  <u>See</u> Tr. at 6:12-16 (Juarez).  Vencomo-Reyes contended that there was nothing illegal about the firearm, other than that he is an undocumented alien, and that this is a status offense.  <u>See</u> Tr. at 7:17-25 (Juarez).  Asserting that he is not a danger to the community, Vencomo-Reyes pointed to the many letters submitted to the Court and argued that, in the thirty years he has been a member of the community, he has never presented a danger.  <u>See</u> Tr. at 8:1-8 (Juarez).

The Court asked about another incident, preceding the resisting charge, where Vencomo-Reyes refused to obey a lawful order.  <u>See</u> Tr. at 8:13-25 (Court).  In response, Vencomo-Reyes argued that at most that conduct would be a misdemeanor under state law.  <u>See</u> Tr. at 9:1-13 (Juarez). The Court also expressed concern about Vencomo-Reyes' immigration status and whether

he would appear for trial.  See Tr. at 9:17-10:4 (Court).  Vencomo-Reyes asserted that the sentence

he faces in federal court is not very severe and that he stands to lose much more if he fails to appear.

See Tr. at 10:15-18 (Juarez).  He argued that he would lose his family and any chance of becoming

a legal resident.  See Tr. at 10:19-11:16 (Juarez).  Furthermore, Vencomo-Reyes contended that

Judge Schneider did not consider Vencomo-Reyes a flight risk.  See Tr. at 11:21-25 (Juarez).  He

stated that he had no place to go in Mexico, because he was a child and an orphan when he left.  See

Tr. at 12:10-19 (Juarez).  The Court then asked what conditions of release Vencomo-Reyes proposed

and noted that Shirley Reyes' involvement in his arrest troubled the Court.  See Tr. at 13:5-10

(Court).  Vencomo-Reyes suggested that he be subject to electronic monitoring and a $50,000.00

property bond.  See Tr. at 13:11-24 (Juarez).

     The United States argued that it believes there is no reason to disturb Judge Schneider's

findings and that there is clear-and-convincing evidence that Vencomo-Reyes represents a danger

to the community.  See Tr. at 14:11-15 (Torrez).  The United States asserted that Judge Schneider

properly considered evidence that Vencomo-Reyes resisted arrest and was in possession of a firearm

under the first 18 U.S.C. § 3142(g) detention factor, the nature and circumstances of the offense.

See Tr. at 14:18-25 (Torrez).  Arguing that a presumption in favor of detention exists, the United

States pointed out that Vencomo-Reyes' possession of a firearm goes establishes a presumption

under 18 U.S.C. § 3142(f)(1)(E).  See Tr. at 14:25-15:1 (Torrez).  The United States also

emphasized that ICE filed a detention letter against Vencomo-Reyes on August 11, 2011, and that,

if he is released, ICE will begin deportation proceedings.  See Tr. at 15:9-20 (Torrez).  The Court

asked whether this meant Vencomo-Reyes' appearance or non-appearance was beyond his control.

See Tr. at 16:2-5 (Court).  The United States agreed that, if the Court released Vencomo-Reyes,

regardless of the conditions the Court imposed, ICE agents could detain him and begin removal

procedures.  See Tr. at 16:6-12 (Torrez).  At that point, the United States asserted, it would likely dismiss its case, because Vencomo-Reyes would be out of reach, and if Vencomo-Reyes attempted to re-enter the country, he will have committed another felony.  See Tr. at 16:22-17:8 (Torrez).

The United States conceded that there was no argument before Judge Schneider that Vencomo-Reyes is a flight risk.  See Tr. at 17:9-13 (Torrez).  It argued, however, that the Court should be cognizant of Vencomo-Reyes' current immigration status and risk of flight.  See Tr. at 17:13-17 (Torrez).  In response to the Court's question about a risk of non-appearance, the United States maintained that there is some risk of non-appearance.  See Tr. at 18:18-22 (Court, Torrez). The United States countered Vencomo-Reyes' argument that he would not flee because he has nowhere to go in Mexico and suggested that Vencomo-Reyes could flee to somewhere else within the United States to avoid deportation.  See Tr. at 19:1-5 (Torrez).  Finally, the United States argued that the Court should find that Vencomo-Reyes is a danger to the community based on: (i) his failure to obey a lawful command; (ii) his violence towards the police officer; and (iii) his possession of a firearm.  See Tr. at 20:1-7 (Torrez).

Vencomo-Reyes responded, arguing that his detention is really because he is an undocumented alien and that his status is not before the Court.  See Tr. at 21:8-11 (Juarez).  He pointed the Court to 18 U.S.C. § 3142(d), which addresses how immigration status should be treated. See Tr. at 21:11-25 (Juarez).  Vencomo-Reyes argued that the ICE may only ask for a show-cause order to ask him to explain why he should not be deported.  See Tr. at 22:10-14 (Juarez).  Vencomo-Reyes further asserted that, if ICE detained him, the Court would be able to issue a writ and prevent his deportation.  See Tr. at 23:4-7 (Juarez).  Vencomo-Reyes reiterated that the Court should analyze his detention under the § 3142(g) factors and not find a presumption of detention under § 3142(f). See Tr. at 24:10-18 (Juarez).  When asked why the Court could not consider the Statement of

Probable Cause as proof of dangerousness, Vencomo-Reyes replied that there is still a presumption of innocence and that there has been no probable cause determination in state court. <u>See</u> Tr. at 25:7-25 (Juarez).

The United States requested that the Court take a close look at § 3142(f)(1)(E) and determine whether that provision applies. <u>See</u> Tr. at 26:22-27:1 (Torrez). It argued that § 3142(f)(1)(E) applies to status offenses like the one with which Vencomo-Reyes is charged and creates a presumption of detention. <u>See</u> Tr. at 27:12-28:9 (Juarez). In response, Vencomo-Reyes again pointed the Court to a decision of the United States Court of Appeals for the Tenth Circuit, <u>United States v. Ingle</u>, and also to <u>United States v. Begay</u>, 315 F.App'x 53 (10th Cir. 2009). <u>See</u> Tr. at 28:12-22 (Juarez). To clarify Vencomo-Reyes' position, the Court asked whether he thought the Court could legally stop ICE from deporting him, and Vencomo-Reyes answered that he did. <u>See</u> Tr. at 29:6-10 (Court, Juarez). Vencomo-Reyes' counsel, Santiago Juarez, stated that, if ICE picked up Vencomo-Reyes, Mr. Juarez would find a judge to issue a writ of habeas corpus to bring Vencomo-Reyes back before the Court and that ICE would obey. <u>See</u> Tr. at 29:20-30:3 (Juarez).

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." <u>United States v. Cisneros</u>, 328 F.3d 610, 616 n.1 (10th Cir. 2003). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." <u>United States v. Rueben</u>, 974 F.2d 580, 585-86 (5th Cir. 1992). <u>See</u> <u>United States v. Maull</u>, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo). "[I]t is within the district court's authority to review a magistrate's release or detention order sua sponte." <u>United</u>

-9-

States v. Cisneros, 328 F.3d at 616 (citing United States v. Spilotro, 786 F.2d 808, 815 (8th Cir.1986)).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616. To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > **(2)** the weight of the evidence against the person;
> >
> > **(3)** the history and characteristics of the person, including--
> >
> > > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > **(B)** whether, at the time of the current offense or arrest, the person

was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## ANALYSIS

Vencomo-Reyes argues that the Court should release him pending trial.  He asserts that, because he is not charged with an offense under 18 U.S.C. § 3142(f)(1), he "may not be detained as a danger to the community."  Motion at 2.  He further asserts that his status as a deportable alien does not mandate detention.  See Motion at 2 (citing 18 U.S.C. § 3142(d)).  Vencomo-Reyes contends that he is neither a danger to the community nor a risk of flight, and that the Court should release him pending trial.  See Motion at 5.  Moreover, Vencomo-Reyes argues that, because he was in ICE's custody beginning August 19, 2011 and ICE failed to file an Order to Show Cause ("OSC") against him, based on his unlawful presence in the United States, within ten days of his detention, he must be treated in accordance with other provisions of § 3142.  See Motion at 3-4.  Vencomo-Reyes argues that his community and family ties to New Mexico demonstrate that he is unlikely to flee.  See Tr. at 10:15-22 (Juarez).

The United States argues that the Court should affirm Judge Schneider's Detention Order and find that Vencomo-Reyes presents a danger to the community.  See Tr. at 19:14-20:7 (Torrez).  The United States also suggests that, under 18 U.S.C. § 3142(f)(1)(E), there is a rebuttable

presumption that Vencomo-Reyes is a danger to the community and a flight risk.  See Tr. at 26:22-27:1 (Torrez).  Furthermore, the United States points out that Vencomo-Reyes is subject to an ICE detainer and that if the Court releases him on conditions of release pending trial, ICE may proceed with deportation proceedings.

## I.   VENCOMO-REYES IS NOT SUBJECT TO A REBUTTABLE PRESUMPTION THAT HE IS A FLIGHT RISK OR A DANGER TO THE COMMUNITY.

Ordinarily, 18 U.S.C. § 3142 provides that "a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Cisneros, 328 F.3d at 616-17.  See United States v. Villapudua-Quintero, 308 F.App'x 272, 273 (10th Cir. 2009)(unpublished).  This rule implies a presumption in favor of release in most cases.  Furthermore, the burden of proving risk of flight and dangerousness to any person or the community is on the United States.  See United States v. Cisneros, 328 F.3d at 616.  It must prove risk of flight by a preponderance of the evidence and/or prove dangerousness by clear-and-convincing evidence.  See United States v. Cisneros, 328 F.3d at 616 (citing 18 U.S.C. § 3142(f)).  When a defendant is charged with certain crimes, however, a presumption might arise that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F.App'x at 273 ("[T]he drug-and-firearm-offender presumption [of 18 U.S.C. § 3142(e)(3)(A)] applied and defendant was presumed to be both a flight risk and danger to the community."); United States v. Vorrice, 277 F.App'x 762, 762 (10th Cir. 2008)(unpublished) ("[Section] 3142(e) . . . provides . . . rebuttable presumptions favoring detention in certain circumstances.").

The United States asserts that, because Vencomo-Reyes' offense is possession of a firearm,

he falls within the category established in 18 U.S.C. § 3142(f)(1)(E) and that a rebuttable presumption applies.  In his Order, Judge Schneider states that "the presumption applies and has not been overcome," but does not explain on what basis he applies a presumption of detention.  Order at 1.  18 U.S.C. § 3142(f)(1)(E) encompasses "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device (as those terms are defined in section 921)."  18 U.S.C. § 3142(f)(1)(E).  Because Vencomo-Reyes is charged with being an Alien in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2), see Response ¶ 1, at 1, his offense qualifies as "any felony . . . that involves . . . possession or use of a firearm," 18 U.S.C. § 3142(f)(1)(E).  For this offense to qualify for a rebuttable presumption, however, it must also fall under either 18 U.S.C. § 3142(e)(2) or (e)(3).  18 U.S.C. § 3142(e)(2) applies a rebuttable presumption of dangerousness and flight where (A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed . . . ."  18 U.S.C. § 3142(e)(2)(A).  18 U.S.C. § 3142(e)(3) applies a rebuttable presumption where there is probable cause to believe that a defendant committed:

> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . , the Controlled Substances Import and Export Act . . . , or chapter 705 of title 46;
>
> (B) an offense under section 924(c), 956(a), or 2332b of this title;
>
> (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (D) an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed; or
>
> (E) an offense involving a minor victim . . . .

18 U.S.C. § 3142(e)(3)(A)-(E).   Vencomo-Reyes' offense does not fall within any of the § 3142(e)(2) or (e)(3) categories, because he has not been convicted of any offense described in § 3142(f)(1) nor is there probable cause to believe that he has committed any of the offenses listed in § 3142(e)(3).   Because § 3142(e)(2) and (e)(3) provide the only circumstances under which the Court may apply a presumption in favor of detention, the Court finds that no presumption applies in this case.

## II.   THE 18 U.S.C. § 3142(g) FACTORS WEIGH IN FAVOR OF DETAINING VENCOMO-REYES.

The United States bears the burden of proving dangerousness by clear-and-convincing evidence, and the burden of proving risk of flight by a preponderance of the evidence.   See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616.   Subsection 3142(g) of Title 18 of the United States Code lists the factors that a court shall consider when determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."   18 U.S.C. § 3142(g).   Those factors are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a firearm;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Under the § 3142(g)'s first factor, the Court must examine the nature and circumstances of the offense charged, including whether it involved a crime of violence. Vencomo-Reyes contends that his offense is not a crime of violence under the reasoning of United States v. Ingle. In United States v. Ingle, the Tenth Circuit found that an offense under 18 U.S.C. § 922(g)(1), that being a Felon in Possession of a Firearm, is not a crime of violence under 18 U.S.C. § 3156(a)(4)(B) of the Bail Reform Act. See 454 F.3d at 1986.[5] In reaching that result, the Tenth Circuit noted that: (i) its decision was in line with the majority of circuits; (ii) "ex-felons have the same motives as lawful possessors to possess a firearm -- self-defense, hunting, gun-collecting, and target practice"; and (iii) "the mere possession of a firearm by a convicted felon does not create a substantial risk that physical force will be used against the property or person of another." United States v. Ingle, 454 F.3d at 1086 (quoting United States v. Rogers, 371 F.3d 1225, 1227 (10th Cir. 2004); United States v. Lane, 252 F.3d 905, 906 (7th Cir. 2001)). The Tenth Circuit applies a categorical approach to identify a crime of violence as defined in § 3156(a)(4). See United States v. Ingle, 454 F.3d at 1084-85. This Court has noted that the Tenth Circuit distinguished § 922(g)(1) from other provisions of § 922

---

[5]Although the Supreme Court of the United States has recently discussed the phrase "violent felony" and described its categorical approach to analyzing that language, those cases addressed the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Begay v. United States, 553 U.S. 137, 139 (2008)(analyzing whether driving under the influence is a "violent felony" under the Armed Career Criminal Act). See James v. United States, 550 U.S. 192, 195 (2007)(analyzing whether attempted burglary, as Florida law defines that word, is a "violent felony" under the Armed Career Criminal Act). The Court, however, analyzes the phrase "crime of violence" under 18 U.S.C. § 3156(a)(4)(B). Furthermore, after the Supreme Court decided those cases, the Tenth Circuit has continued to cite United States v. Ingle and the cases leading up to that decision as good law. See United States v. Serafin, 562 F.3d 1105, 1110, 1111 n.6 (2009) (citing United States v. Rogers, 371 F.3d at 1228; United States v. Ingle, 454 F.3d at 1085-86; United States v. Vorrice, 277 F.App'x 762, 763 n.1 (10th Cir. 2008)(unpublished)("The district court erred in characterizing firearm possession as a crime of violence under § 3142(e) and (f)(1)(A).")(citing United States v. Ingle, 454 F.3d at 1086.)

which the Tenth Circuit has found to be crimes of violence, because the "risk posed [under § 922(g)(1)] is not necessarily substantial" whereas "§ 922(g)(8) and (9) proscribe conduct 'necessarily involv[ing] actual violence or credible threats of violence.'" United States v. Perea, No. 09-1034, 2010 WL 2292419, at *11 (D.N.M. May 24, 2010)(Browning, J.)(quoting United States v. Ingle, 454 F.3d at 1230-31).[6]  In the United States v. Ingle opinion, the Tenth Circuit does not engage in an in-depth analysis of the differences between § 922(g)(1) and § 922(g)(8)-(9).  See 454 F.3d at 1085-86.  The Tenth Circuit cites, however, its decision in United States v. Rogers, where, in holding that § 922(g)(8)-(9) were crimes of violence, the Tenth Circuit distinguished cases from other circuits which held that § 922(g)(1) was not a crime of violence.  See United States v. Ingle, 454 F.3d at 1086 (citing United States v. Rogers, 371 F.3d at 1229).  In United States v. Rogers, the Tenth Circuit distinguished § 922(g)(1) cases, because those cases held that, "although there might be some increased chance of violence flowing from the possession of a weapon by a felon, that risk could simply not be classified as substantial" and by contrast persons charged under § 922(g)(8)-(9) "necessarily involve actual violence or credible threats of violence." 371 F.3d at 1229-30 (emphasis original)(citing United States v. Lane, 252 F.3d 905, 906-07 (7th Cir. 2001); United States v. Singleton, 182 F.3d 7, 14-15 (D.C. Cir. 1999)).  Thus, in United States v. Ingle, the Tenth Circuit

---

[6]18 U.S.C. § 922(g)(8) prohibits anyone who is subject to a domestic violence protection order from possessing a firearm, provided that the court order: (i) was issued after a hearing where the person had an opportunity to participate; (ii) restrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person; and (iii) includes a finding that such person represents a credible threat or by its terms explicitly prohibits the use, attempted use, or threatened use of force against such intimate party or child.  See 18 U.S.C. § 922(g)(8).  18 U.S.C. § 922(g)(9) prohibits any individual who has been convicted in any court of a misdemeanor crime of domestic violence from possessing a firearm.  See 18 U.S.C. § 922(g)(9). In United States v. Rogers, the Tenth Circuit determined that violations of 18 U.S.C. § 922(g)(8) and (9) were crimes of violence.  See 371 F.3d at 1228.  See also United States v. Perea, 2010 WL 2292419, at *7.

adopted the reasoning of the cases that it distinguished in United States v. Rogers.  See United States v. Ingle, 454 F.3d at 1086.

Under 18 U.S.C. § 3156(a)(4)(B), the term "crime of violence" means "an offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."   18 U.S.C. § 3156(a)(4)(B).  See also United States v. Ingle, 454 F.3d at 1085.  No federal court appears to have addressed whether an offense under § 922(g)(5) qualifies as a crime of violence.  Following the rationale of United States v. Ingle, however, the Court finds that § 922(g)(5) is not a crime of violence.  Being an alien in possession of a firearm is much like being a felon in possession of a firearm.  Like § 922(g)(1), an offense under § 922(g)(5) is "unquestionably a felony" presenting "some risk of physical force being used against another."  United States v. Ingle, 454 F.3d at 1085 (citations omitted)(emphasis original).  Furthermore, because aliens, like ex-felons, can "have the same motives as lawful possessors of firearms to possess firearms," an alien-in-possession offense under § 922(g)(5) likewise is not "inherently a crime of violence."  United States v. Ingle, 454 F.3d at 1086.  Finally, "the mere possession of a firearm" by an alien does not create a "substantial risk that physical force will be used against the property or person of another," because aliens enter the United States illegally for a wide variety of reasons -- economic, family, or more nefarious purposes -- just as large numbers of felonies involve "economic, regulatory, or other crimes that do not entail physical violence at all."  United States v. Ingle, 454 F.3d at 1086 (citations omitted)(emphasis added).  Because an offense under § 922(g)(5) does not "proscribe conduct 'necessarily involv[ing] actual violence or credible threats of violence," it more closely resembles § 922(g)(1), which the Tenth Circuit has determined is not a crime of violence, than § 922(g)(8) and (9), which the Tenth Circuit found are crimes of violence.  United States v. Perea, 2010 WL 2292319, at *11 (alteration

-17-

original).

Although not a crime of violence, § 3142(g)(1) notes that a court should consider whether an offense involves a firearm.  See 18 U.S.C. § 3142(g).  Vencomo-Reyes is charged with possession of a firearm, and, under § 3142(g)(1), this weighs in favor of detention.  This consideration does not, however, weigh heavily in favor of detention, because Vencomo-Reyes does not appear to have used or brandished the firearm in any way.  See Probable Cause at 1-2.  Other circumstances surrounding Vencomo-Reyes' conduct at the time of his arrest also weigh in favor of detention, because he resisted arrest and is alleged to have battered a police officer.  Although Vencomo-Reyes' disputes that he intentionally injured the officer, he does not appear to contest that he resisted the officer's lawful order and arrest.  See Tr. at 4:23-5:2, 9:3-13 (Juarez).  Vencomo-Reyes' possession of a firearm and resistance of arrest both tip the first § 3142(g) factor in favor of detention.

The second § 3142(g) factor also weighs in favor of detention.  The evidence against Vencomo-Reyes, if admissible, supports a finding of guilt.  Vencomo-Reyes is an undocumented alien and had a firearm in his car; the weight of the evidence is thus against him.  See Tr. at 6:13-15, 21:10 (Juarez).

Furthermore, the third § 3142(g) factor -- the defendant's history and characteristics -- weighs in favor of detention.  Vencomo-Reyes has strong family ties to New Mexico, including a wife and two children.  See Motion at 2.  He has lived his entire adult life and part of his childhood in New Mexico.  See Motion at 1-2.  Vencomo-Reyes also submitted several letters demonstrating that he is a valued part of the Taos community.  See, e.g., Letter from Sarah Martinez to the Court at 1 (dated August 21, 2011), filed August 24, 2011 (Doc. 7-2)("Martinez Letter"); Letter from Claudia Gutierrez to the Court at 1(dated August 21, 2011), filed August 24, 2011 (Doc. 7-

3)("Gutierrez Letter"); Letter from Mr. and Mrs. Abeyta to the Court at 1 (dated August 22, 2011),

filed August 24, 2011 (Doc. 7-5)("Abeyta Letter").  While the PTSR does not indicate whether or

how Vencomo-Reyes is employed, these letters indicate that Vencomo-Reyes works construction

jobs in the Taos area.  See Martinez Letter at 1; Abcyta Letter at 1.  In addition to the charges

Vencomo-Reyes faces here and in state court, the PTSR indicates that Vencomo-Reyes has

committed three other offenses.  Those offenses, however, occurred in the 1980s, with the most

recent offense taking place in 1987.

When considering the history and characteristics of a defendant, the Tenth Circuit has held

that a "defendant's immigration status and the existence of an ICE detainer are relevant."  United

States v. Salas-Urenas, 430 F.App'x 721, 723 (10th Cir. 2011)(unpublished).[7]  In that decision, the

Tenth Circuit did not discuss how courts should weigh this factor and determined that it "need not

resolve whether pre-trial detention would be proper based solely on a defendant's immigration status

or an ICE detainer."  United States v. Salas-Urenas, 430 F.App'x at 723.  The Court determines that

the existence of an ICE detainer "weighs heavily in the risk of flight analysis."  See United States

v. Lozano-Miranda, No. 09-20005, 2009 WL 113407, at *3 (D. Kan. Jan. 15, 2009).  This Court has

considered the effect of a defendant's immigration status in other opinions.  In United States v. Min,

No. 07-1199, 2007 WL 5685126 (D.N.M. Nov. 21, 2007)(Browning, J.), the Court affirmed the

Magistrate Judge's decision to detain a defendant because: (i) the Court could not say that the

_____

[7]18 U.S.C. § 3142(d), which governs temporary detention of a non-citizen defendant, is not to the contrary.  It provides that, after the attorney for the government notices ICE of the temporary detention to permit deportation, "[i]f the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of law governing release pending trial or deportation or exclusion proceedings."  18 U.S.C. § 3142(d) (emphasis added).  This provision does not prohibit the Court from considering a defendant's immigration status in its detention analysis.

defendant posed no danger to the community because he cannot remain in the United States legally; and (ii) the Court found that the defendant posed a risk of non-appearance.  See 2007 WL 5685126, at *4-5.[8]  The Court found that, while the defendant was not a danger in the traditional sense, releasing him would place him back into society without any legal status, which would be contrary to Congress' views on the dangers of illegal immigration.  See United States v. Min, 2007 WL 568126, at *5.  On the issue of non-appearance, the Court explained that the defendant faced only three options: (i) to appear at his future proceedings and run the risk of conviction and deportation; (ii) to be deported immediately before trial; or (iii) to not appear and to find a location, inside or outside the United States, in which he can be with his family now or possibly in the future.  See United States v. Min, 2007 WL 568126, at *5.  In a different case, a defendant was released from detention pre-sentencing to attend his son's funeral and, before the sentencing was set, the United States Border Patrol deported him.  See United States v. Melo-Valencia, No. 04-2197, 2010 WL 2977619, at *1 (D.N.M. June 28, 2010)(Browning, J.).  There, the defendant attempted to return to the United States for sentencing, but despite requests from the United States Attorney's Office, he was not allowed to re-enter the country.  See United States v. Melo-Valencia, 2010 WL 2977619, at *5.

---

[8]Under federal immigration law, it is not a felony to be in the United States illegally. Although it is a misdemeanor the first time an individual enters the United States without inspection, see 8 U.S.C. § 1325(a), those who are in the United States illegally because they have overstayed lawful temporary visas have not committed criminal acts, even though they are subject to deportation, see 8 U.S.C. § 1227; Stephen H. Legomsky, Portraits of the Undocumented Immigrant: A Dialogue, 44 GA. L. REV. 65, 143-44 (2009)("Those who became undocumented by overstaying lawful temporary visas have not committed criminal acts, but they too have violated the immigration laws and are subject to removal on that ground.").

Other courts have debated whether to detain a defendant subject to an ICE detainer.[9]  Some courts have determined that the likelihood of deportation may not be considered.  See United States v. Marinez-Patino, No. 11-064, 2011 WL 902466, at *6 (N.D. Ill. Mar. 24, 2011)("An immigration removal order does not create a serious risk that a defendant will flee, and the likelihood of a defendant's deportation is not among the Section 3142(g) factors that the Court may consider."); United States v. Barrera-Omana, 638 F.Supp.2d 1108, 1110 (D. Minn. 2009)(stating that Congress has not "told a court to consider the existence of ICE detainer among [the § 3142(g)] factors . . . . As such, it must be excluded from the detention analytic.").  Neither of these courts are along the southern border and have apparently not had the very real experience of seeing a defendant released, ICE immediately deporting the defendant, the defendant trying to come to the United States so he can appear in court, and the United States Attorney's Office not being able to do anything about the situation.  Moreover, the Illinois and Minnesota court's reasoning contradicts the Tenth Circuit's holding that an ICE detainer is relevant to a defendant's history and characteristics.  See United States v. Salas-Urenas, 430 F.App'x at 723.  While other courts have not found the existence of an ICE detainer relevant under the § 3142 factors, the Tenth Circuit has.  Congress did not explicitly list many prior acts or conditions, but there is no indication that Congress did not consider its general terms to be read broadly or to limit what the Court can consider.  There is nothing in §

---

[9]If federal or local law enforcement informs ICE that an alien is in custody on non-immigration related charges, ICE may issue a detainer requesting that the law enforcement agency hold the individual for up to 48 hours (not including weekend days and holidays) beyond the time that the detainee would otherwise be released, to allow ICE to assume custody if it chooses to do so.  See 8 C.F.R. § 287.7(d); Buquer v. City of Indianapolis, No. 11-708, 2011 WL 2532935, at * 3 (S.D. Ind. June 24, 2011).  It appears to the Court that the "Detention Letter" that Vencomo-Reyes describes as being "filed" against him is the same as a ICE detainer.  See Motion at 4.  Furthermore, at the hearing the United States referred to Vencomo-Reyes as being subject to a detainer, see Tr. at 15:11-18 (Torrez), and Judge Schneider stated that "there is currently an ICE detainer filed against the defendant," Order at 1.

3142(g) that suggests the Court can and should ignore the defendant's status, such as whether he or she is in the United States legally.  The Court is free to consider, for example, other criminal conduct, even if there has been no conviction.

Other courts have said that the different agencies within the Executive Branch of the United States Government may not secure a defendant's detention through threats of deportation. See United States v. Rembao-Renteria, No. 07-399, 2007 WL 2908137, at *3 (D. Minn. Oct. 2, 2007)("Should the Court adopt the government's proffered reading of Title 8, a Catch-22 would arise.  It would be impossible for the Attorney General to prosecute defendants who were not detained because the Attorney General would be required to take such defendants into custody and deport them.").  On the other hand, several courts have held that an ICE detainer and the risk of nonappearance it creates means that there are no conditions that could reasonably assure a defendant's appearance for trial.  See United States v. Ong, 762 F.Supp.2d 1353, 1363 (N.D. Ga. 2010)("Since Ong would likely be removed from the United States and not allowed to re-enter . . . there are no conditions or set of conditions that will reasonably assure Ong's presence as required."); United States v. Lozano, No. 09-158, 2009 WL 3052279, at *4 (M.D. Ala. Sept. 21, 2009)(finding that where an ICE detainer exists, "the government has met the correct standard, as it has established by a preponderance of the evidence that no condition or combination of conditions will reasonably assure defendant's appearance as required for prosecution under the instant indictment." (emphasis original)); United States v. Pantaleon-Paez, No. 07-292, 2008 WL 313785, at *4 (D. Idaho Feb. 1, 2008)("In light of []ICE's imminent detention and subsequent deportation efforts in the event of Defendant's release, it cannot be said that there is any condition or combination of conditions that will assure his appearance at trial."); United States v. Sanchez-Valdiva, No. 08-342, 2008 WL 5104688, at *3 (D. Minn. Nov. 26, 2008)(finding that "there is no

set of conditions that will ensure the Defendant's future appearance in this Court" because the defendant faced a lengthy sentence and "[i]n the event the Defendant remains on release, he will be arrested by ICE and there is a substantial likelihood that he will immediately be removed to Mexico").  The Court finds the reasoning that a defendant subject to an ICE detainer may present a substantial risk of nonappearance -- perhaps through no fault of his own -- more persuasive, more consistent with the Tenth Circuit's precedent in United States v. Salas-Urenas, and more consistent with the Court's prior opinions.

18 U.S.C. § 3142(e)(1) says that a court should determine whether any condition or combination of conditions will "reasonably assure the appearance of the person as required."  18 U.S.C. § 3142(e)(1).  Here, ICE issued a detention letter against Vencomo-Reyes on August 11, 2011 and took Vencomo-Reyes into its custody on August 19, 2011, the day after the state court determined that it should release Vencomo-Reyes pending trial.  Motion at 4.  The detainer and ICE's previous custody of Vencomo-Reyes demonstrate ICE's willingness to act with respect to him and its desire that Vencomo-Reyes be in custody, either its custody or that of the United States Marshals.  See United States v. Ong, 762 F.Supp.2d at 1363.  In United States v. Ong, the United States District Court for the Northern District of Georgia stated: "Since . . . [the defendant] is subject to a detainer for his removal which will be acted upon if he is released from U.S. Marshal custody, the Court concludes that there is great likelihood that Ong will be deported from the United States prior to the conclusion of any criminal proceedings against him."   762 F.Supp.2d at 1363. Furthermore, the failure of coordination between executive agencies is "hardly the fault of that branch," because Congress, not the Executive, decreed that illegal aliens should be deported.  United States v. Lozano, 2009 WL 3052279, at *5.  While ordinarily a defendant's family ties to the State and to the United States weigh in favor of release, in this case it may be that Vencomo-Reyes'

family ties to the United States also give him an incentive to flee to some other part of the United States to avoid the forced separation that deportation might impose.  See United States v. Min, 2007 WL 5685126, at *5 (noting that, if released, the defendant might choose "to not appear and to find a location, inside or outside the United States, in which he can be with his family now or possibly in the future"); Tr. at 19:1-5 (Torrez)("[H]e's certainly going to have some incentive to go somewhere else and despite the fact that you there's some discussion about where else is he going to go, he can go to Colorado, he could go to Texas, to Arizona, he could go anywhere.").

ICE, through its detainer letter and earlier physical custody of Vencomo-Reyes after release on the state charges, has demonstrated its intention to detain him if he is not in some other branch of government's custody.  Thus, one of the harms Congress sought to prevent through 18 U.S.C. § 3142, the harm of needless pretrial detention, is not present in this case.  See United States v. Lozano, 2009 WL 3052279, at *6 ("Here, however, by ordering detention, the court is in no way restricting the defendant's liberty; the defendant will be detained by the Attorney General no matter what the Court finds.").  Mr. Juarez contends that, should ICE attempt to detain Vencomo-Reyes, the Court is empowered to "get him back" for trial. Tr. at 23:4-7 (Juarez).  Vencomo-Reyes and Mr. Juarez offer no statutory or case support for this proposition, however.  The Court has found cases which would suggest that it does not have the power to retrieve Vencomo-Reyes, and in the past has had a defendant deported and unable to re-enter the United States for sentencing.  See United States v. Melo-Valencia, 2010 WL 2977619, at *1 ("At some point before his sentencing date, the United States Border Patrol encountered and deported Melo-Valencia. . . . Despite requests by the United State's Attorney's Office, Melo-Valencia was not allowed to return . . . ."); United States v. Ong, 762 F.Supp.2d at 1359 ("First, the Court agrees with the parties that the immigration authorities . . . cannot be compelled to return Ong to U.S. Marshal's custody in the event he is ordered by

immigration authorities to be removed from the United States." (citations omitted)); United States v. Pantaleon-Paez, 2008 WL 313785, at *4 n.3 ("Defendant's counsel suggests that a court order prohibiting [ICE] from deporting Defendant will ensure his attendance at trial. . . . However, Congress' exercise of its power in the immigration context is largely immune from judicial scrutiny." (citing Fiallo v. Bell, 430 U.S. 787, 792 (1977))).  Furthermore, Congress has provided:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any aline under this chapter.

8 U.S.C. § 1252(g) (emphasis added).  Courts, including the Tenth Circuit, have held that the federal courts do not have jurisdiction to hear an alien's challenge to the Attorney General's authority to commence proceedings, adjudicate cases, or execute removal orders under 8 U.S.C. § 1252(g). See Luevano v. Holder, No. 10-9547, 2011 WL 4509473, at *1 n.2 (10th Cir. Sept. 30, 2011)("Escalera also contends the Attorney General abused his discretion by bringing removal proceedings against him.  We lack jurisdiction to review this claim."); Elgharib v. Napolitano, 600 F.3d 597, 605 (6th Cir. 2010)("Congress acted within its constitutional powers to limit judicial review of constitutional questions under § 1252, and we conclude that § 1252(a)(5) and (g) both preclude district court jurisdiction over constitutional challenges to final orders of removal.").  "[A] primary function of bail is to safeguard the courts' role in adjudicating the guilty or innocence of defendants."  United States v. Salerno, 481 U.S. 739, 753 (1987).  If the Court releases Vencomo-Reyes pending trial, it is more likely than not that his guilty or innocence will never be adjudicated, because ICE will have deported Vencomo-Reyes to Mexico.  Thus, the third factor weighs in favor of detention.

Based on Vencomo-Reyes' criminal history and the crime charged, the Court calculated his guidelines sentencing range as 15 to 24 months, based on a base offense level of 14 pursuant to U.S.S.G. § 2K2.1(a)(6), or 10 to 16 months if he received a 2-level adjustment for acceptance of responsibility.[10]   In one sense, the possible sentence is so short that it is unlikely that Vencomo-Reyes will flee his family and roots in Taos.  While this factor points in favor of release, the Court is inclined to believe that the ICE detainer -- not Vencomo-Reyes -- presents the bigger risk of nonappearance.

Finally, the Court examines the nature and seriousness of the danger to any person or the community that Vencomo-Reyes' release would pose.  Judge Schneider determined that Vencomo-Reyes is a danger to the community, because he resisted arrest and was in possession of a firearm. See Detention Order at 2.  Vencomo-Reyes argues that there is no clear-and-convincing evidence that he poses a danger to the community.   See Tr. at 21:3-7 (Juarez)("I would challenge the Court to say, because he is facing a resisting arrest charge in state court, and that's the only thing he has

---

[10]Vencomo-Reyes represented that he was subject to a potential sentence of 0 to 6 months. See Tr. at 10:15-18, 12:23, 30:18-21 (Juarez).  Vencomo-Reyes provided no basis for this calculation.  When the Court, however, calculated the guidelines, it found that Vencomo-Reyes would be subject to a lengthier sentence.  A person convicted of a § 922(g)(5) offense would fall under U.S.S.G. § 2K2.1, which covers "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition" and provides that a defendant is subject to a base offense level of 14: "[I]f the defendant . . . was a prohibited person at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(6); United States v. Hernandez, 194 F.App'x 851, 853 (11th Cir. 2006)(unpublished)("The Sentencing Guidelines provide that, for a defendant like Hernandez, who was convicted under 18 U.S.C. § 922(g), the base offense level is 14." (citing U.S.S.G. § 2K2.1(a)(6))).  Assuming that none of Vencomo-Reyes' prior convictions were included in his criminal history calculation, because they occurred over 15 years ago, he would have a criminal history category of I.  A total offense level of 14 and a criminal history category of I results in a guidelines range of 15 to 21 months.  See U.S.S.G. ch. 5, pt. A (sentencing table)(2010).  If Vencomo-Reyes received a 2-level acceptance of responsibility under U.S.S.G. § 3E1.1, then he would have a total offense level of 12 and criminal history category of I, which results in a guideline range of 10 to 16 months.  See U.S.S.G. ch. 5, pt. A (sentencing table)(2010).

done in 45 years of life, I think he's a danger to the community."). The Court must, however, consider not only whether Vencomo-Reyes is a danger to the community, but whether Vencomo-Reyes would be a danger to any person or subset of the community. See 18 U.S.C. § 3142(e)(1) (stating that, if a court finds no conditions which would assure "the safety of any other person and the community," then the court should detain the defendant); United States v. Harmon, No. 10-1760, 2010 WL 3075062, at * (D.N.M. July 21, 2010)(Browning, J.)("The Court is concerned that Harmon could, at any time, return to his truant ways, and not appear at court proceedings as required, requiring the United States Marshals to go find and arrest him. Combined with his mental-health history, the Court is concerned that release might put such officers in danger."). Here, Vencomo-Reyes does not appear to challenge the fact that he resisted arrest and disobeyed a lawful order. See Tr. at 9:1-13 (Juarez). The Court is concerned that, given what happened during Vencomo-Reyes' traffic stop, it could not ensure the safety of the United States Marshals if the Court had to send them to arrest him. See United States v. Giangola, No. 07-706, 2008 WL 4861708, at *10 (D.N.M. Aug. 11, 2008)(Browning, J.)("The Court is concerned that, if the Court had to send U.S. Marshals to arrest Giangola, he might resist and hurt them."). Another federal court has noted that resisting arrest reflects a troubling lack of respect for authority. See United States v. Grigsby, No. 10-105, 2010 WL 2927267, at *2 (S.D. Ohio July 23, 2010). Furthermore, the Court notes that, while perhaps not a danger in the traditional sense, if the Court releases Vencomo-Reyes from custody and ICE does not immediately detain him, then the Court will have allowed Vencomo-Reyes to violate United States immigration laws without any consequences when he was arrested for another federal crime. "The Court cannot say that [Vencomo-Reyes] poses no risk of danger to the community, because he will, under the best scenario, remain in the United States illegally." United States v. Min, 2007 WL 5685126, at *5. This factor also weighs in favor of detention.

The weight of the §3142(g) factors points to detention.  While the Court sympathizes with Vencomo-Reyes' situation, because it seems clear that Vencomo-Reyes did not come to the United States of his own free will or under the best of circumstance, he has not followed the proper procedures in the years since his immigration to stay in the United States legally.  Vencomo-Reyes' circumstances alone would make the Court hesitant to release him on any conditions, but the Court finds the conduct of S. Reyes particularly troubling.   When S. Reyes arrived at the scene of Vencomo-Reyes' arrest, she demonstrated a lack of respect for the police officer's authority when he ordered her not to touch the fake social security card, and a willingness to obstruct justice when she began tearing and eating the card.  See Statement of Probable Cause at 1-2.  The Court is concerned that, if it were to release Vencomo-Reyes to his home, they may plan to flee to avoid his potential deportation.  The Court finds that the United States has proved that Vencomo-Reyes presents a risk of non-appearance by a preponderance of the evidence, and that possible release conditions do not alleviate or sufficiently mitigate that risk.  The Court also finds that the United States has shown, by clear-and-convincing evidence, that Vencomo-Reyes presents a risk of danger to arresting police officers.  The Court, therefore will not release Vencomo-Reyes from custody.

**IT IS ORDERED** that the Defendant's Appeal of Detention Order and Motion for Release is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Raul Torrez
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

         *Attorneys for the Plaintiff*

Santiago E. Juarez
Albuquerque, New Mexico

         *Attorney for the Defendant*