**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.      No. CR 11-2563 JB

JULIO REYES-VENCOMO,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Pre-Sentence Statement, filed June 21, 2012 (Doc. 69)("Objection"). The Court held a hearing on June 22, 2012. The primary issue is whether the Court should apply a 6-level enhancement to Defendant Julio Reyes-Vencomo's offense level pursuant to U.S.S.G. § 3A1.2(c)(1) based on his assault of a police officer during the course of his offense. The Court will overrule the Objection. The Court finds that Reyes-Vencomo's assault is relevant conduct and that the United States Probation Office ("USPO") correctly applied a 6-level enhancement pursuant to U.S.S.G. § 3A1.2(c)(1).

**FACTUAL BACKGROUND**

On August 9, 2011, Officer Virgil Vigil and Police Trainee Officer Stephen Ortega stopped Reyes-Vencomo while Reyes-Vencomo was operating his motor vehicle near his home in Taos, New Mexico. See Memorandum Opinion and Order ¶ 1, at 3, filed February 13, 2012 (Doc. 52)("MOO").[1] Vigil and Ortega stopped Reyes-Vencomo and executed a traffic stop, because they

---

[1] The Court's factual background is based on the facts that the Court found, by a preponderance of the evidence, following a suppression hearing.

observed Reyes-Vencomo failing to stop at a stop sign, and exceeding the posted speed limit. See MOO ¶ 2, at 3. While investigating the driver, Ortega, accompanied by Vigil, approached Reyes-Vencomo's vehicle and, pursuant to standard police procedure, asked Reyes-Vencomo for his driver's license, vehicle registration, and proof of insurance. See MOO ¶ 4, at 3. Reyes-Vencomo provided the officers with his vehicle registration information and proof of insurance on the vehicle, informed the officers where he lived, and gave his full name, but indicated that he did not have a driver's license or identification. See MOO ¶ 5, at 4. Vigil then asked Reyes-Vencomo to provide some form of identification, his name, date of birth, and Social Security number to verify Reyes-Vencomo's identity. See MOO ¶ 6, 5. Reyes-Vencomo then provided the officers with his date of birth and produced a Social Security card, giving it to Vigil. See MOO ¶ 7, at 5. Vigil noted that the card's coloring and writing did not appear to be correct, and suspected that the card was fake. See MOO ¶ 8, at 5. Vigil contacted dispatch and initiated a records check of the Social Security number that Reyes-Vencomo provided. See MOO ¶ 10, at 6. The officers ran the card, and it could not be confirmed as a valid card. See MOO ¶ 11, at 6. Dispatch informed Vigil that no record existed matching the Social Security number that Reyes-Vencomo provided. See MOO ¶ 12, at 6.

Vigil informed Reyes-Vencomo that he was going to detain him for further investigation, as he believed that Reyes-Vencomo was in possession of a fraudulent Social Security card. See MOO ¶ 15, at 6. Reyes-Vencomo became frustrated and, without the officers' prompting, exited his vehicle. See MOO ¶ 16, at 6. Vigil was attempting to escort Reyes-Vencomo to his police vehicle when Reyes-Vencomo's cellular telephone began to ring. See MOO ¶ 18, at 7. For officer safety, Vigil instructed Reyes-Vencomo not to reach into his pockets, but Reyes-Vencomo ignored the order and attempted to retrieve the telephone from his pocket. See MOO ¶ 19, at 7. In response

to Reyes-Vencomo's attempt to put his hands in his pockets, Vigil tried to physically restrain Reyes-Vencomo, and both Vigil and Reyes-Vencomo fell to the ground. See MOO ¶ 20, at 8. Reyes-Vencomo's telephone and wallet fell out of his pocket, and remained on the ground while Vigil attempted to gain control of Reyes-Vencomo. See MOO ¶ 21, at 8. The Social Security card, which Vigil had retained, also fell to the ground. See MOO ¶ 22, at 8. Reyes-Vencomo's wife, Shirley Reyes, then arrived on the scene and, contrary to Vigil's directions, picked up Reyes-Vencomo's suspect Social Security card, tore it into pieces, and stuffed them into her shirt and mouth. See MOO ¶ 23, at 8. Simultaneously, Reyes-Vencomo continued to resist Vigil's attempt to restrain him and head-butted Vigil in the nose as he was attempting to place Reyes-Vencomo in the back of the police unit. See MOO ¶ 25, at 9.

After Reyes-Vencomo was transported to the police station, officers inventoried his wallet and found a Permanent Resident Alien card. See Presentence Investigation Report ¶ 14, at 4 (disclosed June 18, 2012)("PSR"). A subsequent investigation revealed that the Permanent Resident Alien card was fraudulent. PSR ¶ 14, at 4. The number on the card belongs to a Naturalized Russian female, but the card contained Reyes-Vencomo's picture. See PSR ¶ 14, at 4.

## PROCEDURAL BACKGROUND

On September 27, 2011, a federal grand jury in the District of New Mexico returned an indictment against Reyes-Vencomo, charging him with being an Alien in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). See Doc. 16. On March 28, 2012, a second federal grand jury returned a Superseding Indictment that charged Reyes-Vencomo with: (I) falsely representing a number to be a social security number, with intent to deceive, when such number is not the social security number assigned to him, in violation of 42

U.S.C. § 408(a)(7)(B); (ii) knowingly possessing a document prescribed by statute and regulation for entry into, and as evidence of authorized stay and employment, in the United States, which he knew to be forged, counterfeited, altered, and falsely made, in violation of 18 U.S.C. § 1546(a); (iii) knowingly possessing an alien-registration-receipt card that he knew to be forged, counterfeited, altered, and falsely made, in violation of 18 U.S.C. § 1546(a); and (iv) being an alien, illegally and unlawfully present in the United States, who knowingly possessed two firearms, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). See Superseding Indictment at 1-2, March 28, 2012 (Doc. 57). On April 16, 2012, Reyes-Vencomo pled guilty to Counts 1-3 of the Superseding Indictment, charging a violation of 42 U.S.C. § 408(a)(7)(B), that being False Representation of a Social Security Number, and two violations of 18 U.S.C. § 1546(a)(2), that being Fraud and Misuse of Visas, Permits, and Other Documents. See Plea Agreement ¶ 3, at 64, filed April 16, 2012 (Doc. 64). The parties stipulate, pursuant to rule 11(c)(1)© of the Federal Rules of Criminal Procedure, that a sentence of ten months is the appropriate disposition for this case. See Plea Agreement ¶ 9(a), at 4. Reyes-Vencomo also agrees not to seek a downward departure or variance from any sentence in conformity with the Plea Agreement. See Plea Agreement ¶ 9(d), at 4. Reyes-Vencomo also recognizes that his guilty plea may have consequences with respect to his immigration status. See Plea Agreement ¶ 11, at 6. Finally, Reyes-Vencomo agrees to waive his right to appeal the conviction, and any sentence at or under the maximum statutory penalty. See Plea Agreement ¶ 12, at 6.

      On June 18, 2012, the USPO disclosed a PSR for Reyes-Vencomo. The USPO notes that Counts 1-3 are grouped for guideline calculation purposes pursuant to U.S.S.G. § 3D1.2(b). See PSR ¶ 22, at 6. The USPO calculates a base offense level of 8, pursuant to U.S.S.G. § 2L1.2,

because the offense involves fraud and misuse of visas, permits and other documents. See PSR ¶ 23, at 6.  The PSR then applies a 6-level enhancement, pursuant to U.S.S.G. § 3A1.2(c)(1), because Reyes-Vencomo created a substantial risk of serious bodily injury when he assaulted Vigil. See PSR ¶ 25, at 6.  The PSR then applies a 2-level reduction, pursuant to U.S.S.G. § 3E1.1, based on Reyes-Vencomo's acceptance of responsibility. See PSR ¶ 30, at 6.  Accordingly, Reyes-Vencomo has a total offense level of 12. See PSR ¶ 31, at 6.  The USPO calculates that Reyes-Vencomo has a criminal history category of I, based on no criminal history points. See PSR ¶ 36, at 7.  A total offense level of 12 and a criminal history category of I establishes a guideline range of 10 to 16 months. See PSR ¶ 58, at 12.

On June 21, 2012, Reyes-Vencomo filed his Objection. See Doc. 69.  Reyes-Vencomo objects to paragraph 25 of the PSR and the USPO's application of the 6-level enhancement, pursuant to U.S.S.G. § 3A1.2(c)(1). See Objection at 1.  He argues that he was "not charged in this case with any wrongful conduct towards the police officer and all charges regarding any alleged assault were dismissed." Objection at 1.  He asserts that the enhancement would not effect his sentence, but that it may impact his immigration status. See Objection at 1.

On June 21, 2012, the USPO filed an Addendum to the Presentence Report ("PSR Addendum").  The USPO maintains that the 6-level enhancement is appropriate. See PSR Addendum at 1.  It asserts that the PSR includes information contained in the discovery materials and any relevant conduct information. See PSR Addendum at 1.  It argues that, according to discovery materials, Reyes-Vencomo was being detained for further questioning when he intentionally hit Vigil on the nose with his head, causing cartilage damage. See PSR Addendum at 1.  The USPO contends that the contact between Reyes-Vencomo's head and Vigil's nose could

have caused permanent damage to Vigil's nose, such that there was a substantial risk of serious bodily injury.  See PSR Addendum at 2.  It also notes that the Reyes-Vencomo was residing in the United States illegally and will likely be deported because of his felony conviction.  See PSR Addendum at 2.

On June 22, 2012, the Court held a sentencing hearing.  Reyes-Vencomo argued that the state charges related to the assault and battery of Vigil were going to be dismissed, because the district attorney's office was no longer interested in pursuing those charges.  See Transcript of Hearing at 4:5-17 (June 22, 2012)(Juarez)("Tr.").[2]  He argued that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), certain enhancements qualify as new criminal charges and should be tried before a jury, because the impact on sentencing is so great.  See Tr. at 4:18-5:5 (Juarez).  Reyes-Vencomo asserted that his concern was twofold: (I) whether this altercation was relevant conduct under the offense to which he pled guilty; and (ii) what level of proof is necessary.  See Tr. at 5:6-9 (Juarez).  He also contended that the Court should be conscious of the fact that this enhancement could have immigration consequences for him.  See Tr. at 5:10-21 (Juarez).  The United States argued that the enhancement was correctly applied and that the Plea Agreement, which stipulates to a sentence of 10 months, is based on a guideline range which includes the enhancement.  See Tr. at 6:6-13 (Rees).

## PROOF OF ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, the Supreme Court of the United States reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution limits this discretion and that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted). In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court expanded its earlier holdings to apply to sentencing enhancements that exceeded maximum sentences under the sentencing guidelines. See 543 U.S. at 239 ("Regardless of whether the legal basis of the accusation is in a statute or in guidelines promulgated by an independent commission, the principles behind the jury trial right are equally applicable.").

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the United States Court of Appeals for the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement-findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the

defendant and used that amount to increase his sentence under the guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increased the defendant's guideline sentencing range from 63 to 78 months to 121 to 151 months.  See United States v. Magallanez, 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker made the guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  408 F.3d at 685 (citation omitted).

## LAW REGARDING RELEVANT CONDUCT AT SENTENCING

In calculating an appropriate sentence, the guidelines consider a defendant's "offense of conviction and all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1 cmt. n.1(H).  In United States v. Booker, the Supreme Court noted:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (quoting 18 U.S.C. § 1951(a))(emphasis in original).  The Supreme Court's reasoning in United States v. Booker suggests that the consideration of real conduct is necessary to

effectuate Congress' purpose in enacting the guidelines.

Section 1B1.3 provides that the base offense level under the guidelines "shall be determined" based on the following:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2) solely with respect to offenses of a character for which [U.S.S.G.] § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4). The court may consider, as relevant conduct, actions that have not resulted in a conviction. Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct. The court may rely upon reliable hearsay information, so long as there as the evidence meets the preponderance-of-the-evidence standard. See United States v. Vigil, 476 F.Supp.2d 1231, 1245 (D.N.M. 2007)(Browning J.). Accord United States v. Schmidt, 353 F.App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance

of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.

In Witte v. United States, 515 U.S. 389 (1995), the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. The defendant in Witte v. United States had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine into the United States, and in a 1991 attempt to import marijuana. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See Witte v. United States, 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and therefore calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See Witte v. United States, 515 U.S. at 394.

In September 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with the 1990 activities. See Witte v. United States, 515 U.S. at 392-93. The defendant moved to dismiss the indictment, arguing that he had already been punished for the cocaine offenses, because the district court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See Witte v. United States, 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the Double Jeopardy Clause's prohibition against multiple punishments. See Witte v. United States, 515 U.S. at 395. The United States Court of Appeals for the Fifth Circuit reversed the district court and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Witte,

25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Circuit Courts of Appeals, including the Tenth Circuit, that had previously considered this question. See United States v. Witte, 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the circuits and affirmed the Fifth Circuit. See Witte v. United States, 515 U.S. at 395. In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." 515 U.S. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense." 515 U.S. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." Witte v. United States, 515 U.S. at 403.

In United States v. Watts, 519 U.S. 148 (1997), the Supreme Court, in a per curiam opinion, relied upon the Witte v. United States holding and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted. In reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every Circuit Court of Appeals -- other than the United States Court of Appeals for the Ninth Circuit -- and

that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence. See 519 U.S. at 149 (citing, among other authorities, United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.  See United States v. Watts, 519 U.S. at 151.  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

## ANALYSIS

The Court will overrule the Objection.  The Court finds that the altercation between Reyes-Vencomo and Vigil is relevant conduct, and that such conduct supports an enhancement under U.S.S.G. § 3A1.2(c)(1).

The Court first notes that the application of an enhancement under U.S.S.G. § 3A1.2(c)(1) does not implicate the Supreme Court's holding in Apprendi v. New Jersey.  In Apprendi v. New Jersey, the Supreme Court held that an enhancement which increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  See 530 U.S. at 490.  The Supreme Court's decision in that case did not affect a district court's ability to "exercise discretion -- taking into consideration a variety of factors relating to both offense and offender -- in imposing judgment within the range prescribed by statute."  Apprendi v. New Jersey,

530 U.S. at 481.  Accord United States v. Tilga, 824 F.Supp.2d 1295, 1314 (D.N.M. 2011)(Browning, J.).  The statutory maximum for each of the three counts to which Reyes-Vencomo has plead guilty is five years.  See PSR ¶ 57, at 12.  The 6-level enhancement establishes a guideline range of 10 to 16 months, which is a level far below the statutory maximum.  See PSR ¶ 58, at 12.  Accordingly, the USPO's application of U.S.S.G. § 3A1.2(c)(1) does not implicate the Supreme Court's Apprendi v. New Jersey decision.

Reyes-Vencomo objects to paragraph 25 of the PSR.  See Objection at 1.  Paragraph 25 applies a 6-level enhancement, pursuant to U.S.S.G. § 3A1.2(c)(1).  See PSR ¶ 25, at 6. Reyes-Vencomo asserts that it is improper to apply this enhancement, because he was "not charged with any wrongful conduct towards the police officer and all charges regarding any alleged assault were dismissed."  Objection at 1.

U.S.S.G. § 3A1.2(c)(1) provides:

If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable

    (1)    knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom; or

. . .

increase by 6 levels.

U.S.S.G. § 3A1.2(c)(1).  The Tenth Circuit has recognized that "the relevant conduct provision of the Guidelines, U.S.S.G. § 1B1.3, commands that '[u]nless otherwise specified . . . adjustments in Chapter Three [including § 3A1.2], shall be determined on the basis of' the various categories of relevant conduct."  United States v. Holbert, 285 F.3d 1257, 1260 (10th Cir. 2002)(emphasis in original). Accord United States v. Vigil, 476 F.Supp.2d 1231, 1245 (D.N.M. 2007)(Browning, J.).

As the Court noted in United States v. Goree, No. 11-0285, 2011 WL 5223028 (D.N.M. Oct. 20, 2011)(Browning, J.), "[t]he court may consider, as relevant conduct, actions that have not resulted in a conviction," because, "[p]ursuant to U.S.S.G. § 6A1.2, Commentary, evidentiary standards lower than a beyond a reasonable doubt are permitted to show relevant conduct."  2011 WL 5223028, at *4.  In Witte v. United States, the Supreme Court noted that sentencing courts had always considered relevant conduct and held that "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402. Striking a police officer constitutes relevant conduct, because it is an "act" committed "by the defendant" that "occurred during the commission of the offense of conviction . . . or in the course of attempting to avoid detection or responsibility for that offense."  U.S.S.G. § 1B1.3(a)(1). Moreover, the Court found that the United States proved Reyes-Vencomo's relevant conduct by a preponderance of the evidence in its previous MOO, following the suppression hearing.  See MOO ¶ 25, at 9 ("Simultaneously, Reyes-Vencomo continued to resist Vigil's attempt to restrain him and head-butted Vigil in the nose as he was attempting to place Reyes-Vencomo in the back of the police unit.").

The Tenth Circuit has noted that, if the guideline authors want to limit the application of certain enhancements to "the offense of conviction," they use the restrictive language that appears in U.S.S.G. § 3A1.1(a) and § 3A1.2(a).  United States v. Holbert, 285 F.3d at 1261.  In U.S.S.G. § 3A1.1(a), the guidelines require that a victim's status was the "object of the offense of conviction," and, in U.S.S.G. § 3A1.2(a), the guidelines require that the "offense of conviction was motivated by" the official victim's status.  The Tenth Circuit has  held that, "[w]hen the Sentencing

Commission intends to limit the applicability of a victim-related enhancement, it does so explicitly." United States v. Holbert, 285 F.3d at 1261.  In United States v. Blackwell, 323 F.3d 1256 (10th Cir. 2003), the Tenth Circuit noted that U.S.S.G. § 3A1.2(b), which permits "an enhancement where 'during the course of the offense or immediate flight therefrom, the defendant . . . assaulted [an] officer,'" includes relevant conduct, because the phrase "course of the offense" explicitly includes relevant conduct.  323 F.3d at 1261 (emphasis in original). U.S.S.G. § 3A1.2(b) was amended in 2004 and became U.S.S.G. § 3A1.2©.  In United States v. Shelly, No. 05-3679, 2007 WL 1224610 (7th Cir. Apr. 25, 2007)(unpublished), the United States Court of Appeals for the Seventh Circuit affirmed a district court's sentence when the district court adopted the PSR's calculation and applied a 6-level upward adjustment under U.S.S.G. § 3A1.2(c)(1), where the defendant was convicted of possessing of a controlled substance and, in an attempt to flee arrest, struck a DEA agent.  See 2007 WL 1224610, at *1.  Accordingly, relevant conduct is an appropriate consideration for an enhancement pursuant to U.S.S.G. § 3A1.2(c)(1).

Although Reyes-Vencomo does not challenge whether his altercation satisfies the legal requirements of U.S.S.G. § 3A1.2(c)(1), the Court concludes that his conduct supports an enhancement under that provision.  As the USPO accurately noted, Reyes-Vencomo caused Vigil to suffer cartilage damage in his nose and could have caused serious bodily injury.  See PSR Addendum at 2.  Reyes-Vencomo struck Vigil in the face.  He could have caused serious damage to Vigil's nose or head.  Accordingly, Reyes-Vencomo created a substantial risk of serious bodily injury.  Several Circuit Courts of Appeals have also affirmed district court decisions finding that striking an officer creates a substantial risk of serious bodily injury.  In United States v. Gibson, 189 F.App'x 841 (11th Cir. 2006)(unpublished), the United States Court of Appeals for the Eleventh

Circuit held that "Gibson struck a police officer following a chase on foot, and, in so doing, arguably created a serious risk of serious bodily injury." 189 F.App'x at 846-47. In United States v. Mial, 454 F.App'x 161 (4th Cir. 2011)(unpublished), the United States Court of Appeals for the Fourth Circuit held that the U.S.S.G. § 3A1.2(c)(1) enhancement applied where the defendant wrestled with the officer and hit the officer in the face several times. See 454 F.App'x at 163. Serious bodily injury means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental facility; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L). U.S.S.G. § 3A1.2(c)(1), however, requires only that a defendant create a substantial risk of serious bodily injury. Here, Reyes-Vencomo wrestled with Vigil on the ground and then head-butted Vigil in the face. Vigil sustained cartilage damage. As the USPO correctly noted, that impact "could have caused permanent damage to [Vigil's] nose and he could have suffered breathing difficulties for the rest of his life." PSR Addendum at 2. The Court further notes that Reyes-Vencomo did not challenge the USPO's assessment that he created a substantial risk of serious bodily injury. The Court finds, by a preponderance of the evidence, that Reyes-Vencomo struck Vigil's face, creating a substantial risk of serious bodily injury, and will therefore overrule Reyes-Vencomo's objection to the 6-level enhancement under U.S.S.G. § 3A1.2(c)(1).

**IT IS ORDERED** that the Defendant's objection in the Defendant's Pre-Sentence Statement, filed June 21, 2012 (Doc. 69), is overruled. The Court holds that the United States Probation Office correctly applied a 6-level enhancement to Defendant Julio Reyes-Vencomo's offense level, pursuant to U.S.S.G. § 3A1.2(c)(1), based on his assault on Officer Virgil Vigil.

/s/ James O. Browning
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Raul Torrez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Santiago E. Juarez
Albuquerque, New Mexico

    *Attorney for the Defendant*